May it please the Court, my name is Mayor Fetter. I represent the plaintiff and appellant, Viet Mike Ngo. How are you, Mr. Fetter? How are you? Fine, thank you, Your Honor. You're losing the battle of the circuits. Well, hopefully... You've got the Tenth Circuit, and now the Tenth Circuit has followed the Seventh. And the Third Circuit. And the Third Circuit, that's right. Hopefully it'll be a little closer after this Court. So the Sixth Circuit is getting swamped, and you're looking for help from the Ninth Circuit to even out the odds, huh? Your Honor, I submitted a 28-J letter yesterday on this. I don't know... I saw it this morning. The Court received it. Okay. I wanted to be sure of that. And I can start there. I think that there are a number of serious deficiencies with the... But that's really the meat of the coconut, isn't it? If exhaustion and procedural bar are the same thing, or if this federal statute fails to exhaust means you're procedurally barred, that's the end of the case. Well... I mean, if we follow the Seventh Circuit analysis, there's no way you can win. Well, actually, Your Honor, although that's not our primary argument here. In fact, no, we don't think that's the end of the case, because we think that even if there is a procedural forfeiture rule applicable here, that, in fact, the plaintiff's claims in a grievance system were timely. And this is something that hasn't been addressed at all on the facts in the district court. But the problem is he didn't take it to the third level. And so maybe they were timely, maybe they weren't timely, but he clearly did not take the last step. So... Well, actually, Your Honor... Whether he would still go back and take the last step now or not, we don't know. But the important thing is he didn't as of today. I don't believe the record supports that. I think on the record what is apparent is he attempted twice to file his appeals. According to the rules, in order to get to the third level, he had to get the appeals actually filed by the prison appeals coordinator, who screamed the appeals out and refused to do it. So he made every effort that he could. The appeals... I see. I... What prevents him from filing with the next level anyway? Is it... The next level... Because they want... The appeals... As I understand, Your Honor, and this appears in the record, the appeals coordinator is the next level, too. In other words, he's not going to a different... It's not like having something filed in a district court and then going and filing something in the Ninth Circuit. It's all got to go through the same clerk, as it were, who's refusing to file the appeals. Well, he made two attempts. He did. Yeah. And... But... So... Yeah, I'm sure we don't think that it would be the end of the case if there were a procedural default doctrine here, but we really think that there is no such doctrine applicable here, and there are a number of reasons why the other circuits are wrong, but also there is clear law in the Ninth Circuit that there apparently is not in those other circuits to have addressed it. Why would Congress put in an exhaustion requirement if it weren't coupled with a procedural bar? Well, there are a number of things that can be said about that. One is one could as easily ask the question about why would Congress put in a requirement of exhaustion even where futile, and yet the Supreme Court said that that's what Congress did, and the statute says what it says. But there are also reasons. The exhaustion requirement is not at all meaningless without procedural default. There are – well, first of all, let me say several things. One is there are other contexts where an exhaustion requirement is not coupled with a procedural forfeiture requirement. There is – in the Title VII and H Discrimination Act context, as the Sixth Circuit referred to, you don't – your exhaustion requirement is not coupled with procedural forfeiture, but also there are other cases under the... The other case would be the habeas. Well, and I agree, Your Honor. I think that the habeas analogy is closer, and – but this Court has been – was very clear in Franklin v. Johnson that when Congress says exhaustion in a statute, exhaustion means exhaustion only and not procedural default. Congress would have to go the extra step and actually put it in the statute. If you look at the language of the statute, there's no reference to procedural default. And the reasons why you have a procedural default requirement created in the habeas context are almost completely absent in this context. The – you have procedural default accompanying – well, first of all, I should say that there are plenty of cases, Franklin v. Johnson refers to it, actually, where it's pointed out that when normally exhaustion means that when the prisoner or when the petitioner in the habeas case has failed to exhaust, what happens is dismissal so that he can go back and attempt to exhaust. It's not considered automatically the same. And actually, there are three other circuits who, while not addressing the argument made in the Seventh Circuit case and more recently in the other cases, have actually had cases since the PLRA in which they have dismissed claims as unexhausted where you're dealing with a short prison time limit and – but dismissed them without prejudice, clearly indicating that the plaintiff can come back after exhausting. And those cases are not in my brief. I probably should mention the citations because they didn't come up there. There is a D.C. Circuit case. Well, you can give us a gum sheet and write those down.  Thank you, Your Honor. But also, they definitely do not automatically go together. And actually, I should also mention the Supreme Court's Patsy v. Board of Regents case where they decide that there is no general exhaustion requirement in Section 1983 cases. One of the things that they – they cite a couple of things relevant here. One is that they say that where Congress has carved out a small exception to the general non-exhaustion requirement in Section 1983, they're not going to go beyond that. And that seems to me obviously applicable here where Congress has not gone as far as to create a procedural default requirement. But also, one of the reasons that they cite for not adopting – 1983 cases. Back, I think, in the – oh, in the late 60s and 70s, some courts took the position that before you could file a 1983 case, you had to file a claim with a local government entity, and you had to pursue that claim. And the Patsy case. And we ruled that, no, that was not necessary. And the Patsy case in the Supreme Court confirms that approach and says that there's no general Section 1983 exhaustion requirement, and they won't go beyond the congressional carve-out of a specific requirement. But also, one of the reasons that the case cites for not imposing an exhaustion. Don't we do the exhaustion and have the exhaustion requirement in these habeas cases? Isn't that a matter of comedy? Yes. Well, I – yes. I actually – and I really do want to get to the differences from habeas because they're very – they're very important. First of all, in the habeas situation, the procedural default doctrine grows out of the adequate and independent state ground doctrine, where you wouldn't be able to go past a state ruling that rests on a state rather than federal ground. And procedural default can be such a state ground. No application here where you're not – the federal court is not reviewing a state decision. There's simply a grievance procedure you have to go through, but you then have an independent Section 1983 action. That's one reason. The second thing is Wainwright v. Sykes, which is the case that basically creates the modern procedural default doctrine, focuses very heavily on the fact that the state court criminal trial as the main event rather than a – just a trial on the road on the way to a main event in federal habeas. Here, again, the grievance procedure is not supposed to be the main event. A third difference is, as I say, the Patsy case indicates that the court is much more reluctant to add to congressional exhaustion requirements in the Section 1983 context than they are in the habeas context. You have – you're also deferring to something different. In procedural default in habeas, you're talking about well-developed state criminal rules applied by judges guaranteeing due process. Here you're talking about essentially a decision by a prison functionary under a time limit here of 15 days where you actually have a situation where the same people who are setting the time limits are among the main defendants in Section 1983 prisoner cases. You're talking about a lowly biased prison functionary. I'm talking about – I'm talking about someone who I think would generally be agreed is not entitled to quite the same high comedy concerns. Would we afford any deference to – accord any deference to a decision of the appeal – of the appeals body or whatever the process is? I think – I think that that's one of the questions that would have to be answered. I mean, I would argue in this case no, but I think either way it helps to point up the problem of grafting on a procedural default requirement here, because either way, on the one hand, the Federal courts would be left trying to figure out whether state – whether prison grievance system rules call for a – properly call for a dismissal or not, or on the other hand, if you're going to defer, you're basically deferring to an unexplained decision by the equivalent of a clerk saying, we're not going to file your appeal. So you'd be dealing with a situation – You certainly wouldn't defer to them on questions of Federal law. You wouldn't. I mean, I think it would be very strange to say we defer to a prison functionary in deciding Federal law. Well, but I think that if you're trying to press the habeas analogy, in the habeas context, you would normally, except in unusual situations, accept the State's view of what its procedural requirements are. But I – I submit it seems really different here to be saying that you would – you would be having a required deference to – Is there a duty to go to State courts? Is there a duty to go to State courts in the Section 1985? Part of the exhaustion. There is not. It – the statute – Maybe if you have a – you could get a writ of mandate or something from the State court reviewing the prison official decision. The statute refers to administrative remedies being exhausted. And so there is not a requirement of going to State court. What you do have here, if you interpret Congress as having silently said that there should be an exhaustion requirement here, which, again, as I say, would be contrary to the Court's decision in Franklin, you're – it would be a huge substantive change because basically you'd be creating a tremendous number of forfeitures because of these very short prison timelines – time limits. And you would – and that's something I should add that's one of the reasons relied on in – in Oscar Meyer in the ADA context for not saying that you've got – that you have a procedural default requirement because it would be unfair with the short deadlines. But in particular, you'd be creating the equivalent in this State of a 15-day statute of limitations in other States, also usually very short. And the Court – this runs up against something the Supreme Court did in deciding what the statute of limitations would be for Section 1983 claims generally. This is in Wilson v. Garcia. What the Court said was we're going to set a uniform characterization. It's going to be the statute of limitations that applies to State personal injury actions. And the reason that they do that, one of the main reasons is so as to avoid discrimination against the Federal rights that are protected in Section 1983, figuring that States are not going to go ahead and set their personal injury tort limitations periods at 15 days. And so you avoid that being imposed on Section 1983 plaintiffs. Here, you have a situation where the prison authorities would have every incentive to say 15 days, where in other States I think it's even shorter. And so, as I say, you'd be reading the word – you'd ultimately be reading the word exhaustion in the PLRA as creating this draconian rule leading to mass forfeiture of claims that, you know, is not in the statute itself and not called for by the habeas analogy. Do you want to save any time for rebuttal? Can I save my minus four and a half minutes for rebuttal, Your Honor? I definitely think I should do that. Thank you. Yeah, you're just getting warmed up. Good morning, Your Honor. May it please the Court. My name is Jennifer Burkell with the Attorney General's Office on behalf of FPLES. Essentially, what is at issue in this case is whether or not Congress intended anything by the PLRA's exhaustion mandate. Clearly, it did by the – It clearly intended for the prisoner to first go to the – to the prison authorities. No doubt about that. The question is whether failing to do so is – is fatal. The question is whether or not if you miss that deadline, the only thing you can need to do is go back and try anyway. There's no futility requirement, so you can always try. But in this case, you tried twice. Well, by the mere fact that Congress intended for inmates to exhaust their administrative remedies means that there needs to be some incentive for them to do so, to adopt the plaintiff's position and – There's a great incentive. If they – if they get relief from the administrators, they don't have to come to federal court. Well – They're way ahead. It's no – it's no fun litigating federal court, especially not from prison. Well, I would submit that that's simply – from an inmate's perspective, it's not necessarily the case. First of all, this case – If he gets all the relief he wants from the prison authorities? First of all, this is a prime example of an instance in which the inmate failed to avail himself of the administrative remedies when clearly they could have potentially ameliorated the situation very early on. Instead, he waited eight months to complain about conditions that had been going on during that period of time. What day starts the imposition of this time limit? The day of the restriction? Isn't this a continuing thing? Every day is a new day, and they say you can't do all these things you can't do. Isn't that a new day? And doesn't that – because it's continuing. The last day that it's still continuing that he can't do it, he can still file in. Why not? Well, under the facts of this case, I would submit that that is not the case, because he is attributing this, for instance, lack of ability to participate in programs to a particular decision that was made on a particular date. That would have been the period at which his obligation to file an administrative grievance was triggered. Why is that? You know, people get hurt. They get, say, pushed around. They think they're treated unfairly. And some people just sort of accept it and sulk about it. And, you know, maybe after a while it festers, and they think, you know, this is wrong. Here's a man from Vietnam. And then he decides, well, you know, I really ought to do something about this. So he files his grievance with the state officials in the prison, and he did the first step. He got turned down. And then he did the second step. Well, he was a little late, so he got turned down, but that's a discretionary decision. And then he tried again. And they said, sorry, you're too late. And all this is just set up, isn't it, to give the chance, to give the state a chance to come in and work things out. Isn't that why we have this statute? We do have the statute. You know, we've got a lot of problems in our prison system here in California, haven't we? That is true. Plenty, plenty, plenty, you know. And, I mean, that's a well-known fact. You know, California prison guards kill more prisoners than all of the prison guards in America combined. I read that somewhere. I mean, all the more incentive than. . . Even Texas. All the more incentive. . . I'm not counting death row. . . . for inmates to readily take advantage of their, of the administrative process that is readily available to them in the institution. I mean, there's a reason for filing, you know, time deadlines. No, but 15 days, you know, it's nothing. I don't think you explained or you gave, at least I didn't hear an adequate answer to Judge Rose's question, why isn't this a continuing wrong so that you get classified as a claim of an equal protection violation and some other violations here, and they continue every day. They classify him and he suffers as a result of the classification one day and then he doesn't know anything about it. And then the next day he suffers as a result of the classification. They don't let him talk to people, advocates, which is a violation. And then they don't let him talk again because of the classification. Why isn't every time that the classification impacts his ability to do something or the way he's treated, why isn't that a continuing violation? Well, each time under the scenario you've presented, each time there's a new classification that results in a change in his conditions would trigger the time period within which he is permitted to file a grievance about it. That's different from a scenario where there's one decision being made that has resulted in a ---- There's a decision made to classify him a certain way. And as a consequence of it, one day he suffers a deprivation. And he lets it go, thinking that maybe things will change. You read the Declaration of Independence, right? It is in human nature to let evils continue so long as they are endurable. You let things, evils, pile up, and eventually comes a point where you say enough's enough. Why isn't every day that a new video specification operates a new violation? Because every day brings a new deprivation. It seems perfectly straightforward to me. Well, I mean, in theory, at the point at which it becomes a situation where the inmate feels sufficiently aggrieved to file a grievance, there's a reason why he feels sufficiently aggrieved. Either he disagrees with the original decision that led to that situation, in which case he had an obligation to file at that time, or there's something that's changed to come. Well, you're not answering the question. Maybe he could have filed when the classification changed, although it's not clear to me that a change of classification would necessarily give you the right to claim, so long as nothing bad happens to you as a result of the classification. It seems to me the first time you could actually bring a case and actually have a real case, a real controversy, is when the classification impacts the way you're treated. You get singled out separately from other people. You want to do something, and you can't because of this classification. It seems to me that you have to wait at least until that point to bring the claim. But why is it that you have to bring the claim the first time it happens? It happens one day, and then it happens the next day, and then it happens again the next day, and then a week passes or two weeks, and then it happens again. Why isn't each instance of where the classification leads to disparate treatment, why isn't that separate and you're wrong? What you're complaining about is I was treated differently. Not I was classified wrong, I was treated differently. Well, I think that's a different question than the one presented in this case. That could potentially be a new claim. I don't think it's a different question, but humor me. Well, the scenario you're presenting is an inmate claiming about an equal protection violation. He's being treated differently. The situation that the inmate in this case was complaining about was a decision by a particular individual to exclude him from participation in certain programs due to behavior he'd engaged in, or at least that's what's alleged in the complaint. That's the focus of this inmate's complaint in this instance. And in order to circumvent the exhaustion requirement, he alleges that he's been ---- You're saying you're not going to answer my question. You're not going to tell me why your case is different. So the question I have asked, you're going to choose not to answer it. It's perfectly fine. My right of opinion in this case, if I get the right of assignment, I will remember when I asked this question, the State didn't have an answer or didn't want to give me an answer. Do you want to answer my question? Your Honor, I'm attempting to answer the question. No, what you're telling me is, no, I don't want to answer this question because our case is different. You can tell me that all you want, but I'm not going to forget I asked you a question. Do you choose to answer it? I agree that I will attempt to answer it again, Your Honor. Are you answering it? I will. Okay. Just say yes. Yes. Then proceed to answer it. A point at which an inmate feels as though he's being treated differently and wishes to allege an equal protection violation based on that disparate treatment is an appropriate point at which he can file a grievance on that basis. Yes. So on any given day, if an inmate questions you. Continue your violation. Okay. So let's say now they say you can't meet with certain people, these advocates, because of your behavior. You know, you can meet on day one, and you can meet on day two, and you can't speak to them on day three, and then a week passes where you really can and don't want to speak to them or you don't have an opportunity, and then you again can't because of this classification. Why isn't that exactly the same thing? Or is it the same thing? Well, if what you're saying is that those decisions that he can't speak to whomever or participate in programs were made by an individual on a particular occasion, that's it. You have a classification, and it operates on day one to keep him from doing something, and then it operates on day two to keep him from doing something, and then on day three it again operates to keep him from doing something. Each day he goes down and says I want to speak to these advocates, these people, and I'm not allowed to. Why? Because the guard looks it up and says you are classified that you can't do this. Okay? Why isn't each instance of being denied the opportunity or the right to speak a new violation? Just like you said equal protection was. You're already sort of halfway there. I think that it is in the event that on that third day is the first occasion upon which this inmate learns about a new restriction that's been placed on them. It's the same restriction, but it operates to prevent him from doing it on one day, and it operates again the second day. If the restriction was placed on him at a given time, he's aware of that restriction at that point, the period within which he is obligated to file a grievance is triggered by that decision. That's a question. But being subjected to a restriction isn't even justiciable. I mean, let's say they have a restriction and it never operates to, you know, as a matter of fact it has no effect on your life. You can't bring a lawsuit claiming, oh, they have an entry in the book with this restriction. It's just hypothetical. The violation comes when you want to do something and they say no. And they want to do something the next day, and again they say no. And you want to do something again the third day, and again they say no. What he's complaining about is not the entry in the book. What he's complaining about is the fact that he's not being allowed to do things which he thinks he's entitled to do. Well, I think that you're free to look at it that way, but defendants look at it that a decision was made that resulted in a change in his conditions. He was aware of that decision. Isn't this why we can't let prison authorities really finally decide federal questions like this? Why is this argument of procedural bar sort of silly, Judge Easterbrook not understanding? We really can't have prison authorities making these decisions and precluding the federal courts because they will have every incentive to make these things difficult to do and to keep people from getting in federal court, creating tripwires. Your Honor, I disagree with that. I mean, for instance, Title 15. Prisoners have incentives. Prison guards don't. Title 15 is a set of regulations that goes through a series of processes to get enacted. Potential changes to Title 15 are publicized to a multitude of people, including inmates. Lawyers review Title 15 regulations. These supposed like invidious draconian measures that are in theory going to be taken against inmates would at the very least be taken with the approval of a number of people, apart from the prison guards who are enforcing them. Is there any case that determines that the time starts on the day the restriction was imposed as distinct from the last continuing day? Has that ever been discussed in any case that you're aware of? Not that I am specifically aware of. I think that's what you and Judge Kuczynski have been talking about, right? That's correct, yes. And in all the cases that your office has handled, you've never come across a case where this argument's been made, is that correct? It's possible. Unfortunately, I can't speak for all the deputies in my office. The Title 15 regulations in this instance provide that an inmate has 15 working days from the decision or event being complained of within which to file a grievance. Thank you. Where did that 15 days come from? I would have to presume from this type of process that I just alluded to. I can't speak to the basis for the specific 15-day limit, but it was something that resulted from an administrative process that went on for some time. The whole purpose of the statute is to give the State prison system an opportunity to work things out with the inmate if there's a grievance. Correct. And so you got that opportunity. Well. Twice. And each time, you know, it was rejected. The last two times, well, there's three times. It was untimely. Yeah, there's. So I don't. And we have exhaustion in other contexts where people are, you know, in the habeas situation. We do that as a matter of comedy to give the State an opportunity there to look at what the inmate is complaining about. And if that doesn't work out, then they can come to federal court. But, you know, exhaustion can be waived, too. And here, the person who rejected the late application certainly had the discretion to accept it and then have this other process start where somebody sits down and talks to this guy. Well, Your Honor, I would submit that there's a difference between an opportunity in words and an opportunity in true meaning. What's the big deal if they bring a 1983 action in the federal court? Not that we're looking for business, but. Well, what's the big deal if they go ahead and consider his grievance anyway, even though they think it might be late? Well, there could be a variety of circumstances that would account for that. The prison has a lot of obligations. It has approximately something like 160,000 inmates to deal with. It just, I mean, it's presumably the 15-day fine. Every incentive to find that there have been a procedural bar, I mean, that's really sort of an impartial decision maker if he's that swamped with work. I mean, it strikes me that the argument that this is a continuing violation, that every time something like this happens to him, he has a new claim, is a plausible one. I don't see anything in the summary injection by this clerk of the 15-day requirement of even a beginning of any understanding of this concept. And what you are really asking us is to defer to this prison functionary, as your opposing counsel calls him, who may not be a lawyer and probably has very little understanding of the concept of continuing violation and is pressed by hundreds of thousands of these claims, a sort of final determination that this grievance is dead now and forever, even though he might for the many years to come be suffering constitutional deprivations. It's all dead and gone. That's a pretty momentous thing for you to ask us to be doing. Your Honor, the inmates... Are you sure you don't want to confess error? I certainly don't want to confess error. You are here representing an attorney general. You're not merely an advocate for the state. You are here to do the just and right thing. It just strikes me that this is not the kind of position you really want to be espousing. I'm espousing a position that I believe is entirely consistent with Congress's mandate and the exhaustion requirement, in addition to the fact that in this case... If I explain to Congress, as I just did, what it is you're claiming they did, they would agree with you? I would like to add something that's in the record, which is... Having some low-level functionary who apparently doesn't... We have no evidence to understand at all the concept of continuing violation or the nature. You decide that 15 days is up and you're barred forever. You may be in prison for the next 30 years and... Well, this Court is free to decide that something that falls within the context of a violation is an exception to the exhaustion mandate. I agree with you that it's an issue that's hard to reconcile in general with the position that we're espousing. However, the position that we're espousing is consistent with Congress's mandate and is consistent with other circuit court decisions that have decided the issue. I know when you go back to your office, you will consider the possibility, in sort of representative or just solemn, that maybe you want to confess error and change your position in this case. I know, flushed from your victory in the California Supreme Court yesterday, your office will feel in a generous mood. I just would like to, if I could, just one last point, bring your attention to the fact that the other complaint that this inmate was making was an... We want you to leave happy. Well, I don't think I'm going to in light of, you know, this. But just one last thing. The inmate wasn't just complaining about ongoing conditions. He also, in addition in this lawsuit, is complaining about a particular classification decision in which he was placed in administrative segregation on a particular date. So there are two separate complaints here. One is this ongoing violation about which we've been talking for quite a while now, and the other is an isolated decision to place him in administrative segregation. So that's a separate issue as well. Fair enough. Thank you very much. Thank you. All right. See you later. And we'll take up number five. Jackson versus Department of Mental Health. I have to find my briefs here. I have no idea.
judges: Pregerson, Kozinski, Rhoades